# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLOW WAY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:20-CV-03046 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| VILLAGE OF LYONS, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Willow Way, LLC, is a California-based real estate investment company. The company brings this lawsuit against the Village of Lyons, Illinois, alleging federal constitutional violations, as well as an eminent-domain claim under Illinois law.[1] R. 1, Compl.[2] The case involves the Village's demolition of a house on real estate owned by Willow Way. The Village has moved for summary judgment. R. 39, Def.'s Mot. Summ. Judgmt. For the reasons explained in this Opinion, the Court grants summary judgment in favor of the Village.

## I. Background

In deciding the Village's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus.*

---

[1] The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

[2] Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). So Willow Way gets the benefit of all reasonable inferences. The facts below are undisputed unless otherwise noted.

In May 2016, Willow Way secured a quit claim deed conveying title to 7905 West 45th Street, in Lyons, Illinois. DSOF ¶¶ 1, 4.[3] The Village of Lyons conducts an inspection before a property is sold in its jurisdiction. *Id.* ¶ 3; R. 41-3, Def.'s Exh. 3, John Pierce Dep. at 84:18–21. The seller of a property must normally resolve any code violations before the property can be sold. DSOF ¶ 3; R. 41-4, Def.'s Exh. 4, Carlos Torres Dep. at 29:5–4. If the purchaser desires to correct the violations (instead of the seller), then it must sign a Transfer of Compliance Affidavit before doing so. *Id.*

On June 1, 2016, the Village of Lyons conducted a sales inspection of the house located at 7905 West 45th Street. DSOF ¶¶ 3, 5. The inspection report revealed 46 violations. *Id.* Soon after, Willow Way executed a Transfer of Compliance Affidavit and accepted responsibility for remedying the violations by August 20, 2016. *Id.* ¶ 6, 7. Willow Way sought a meeting with Village officials concerning the violations between June 2016 to December 2016. PSOAF ¶ 29, 30.[4] In mid-2017, Willow Way hired B & L Construction, a general contractor, to correct some of the violations listed in the June 2016 inspection report. DSOF ¶ 9; PSOAF ¶ 31.

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for the Village's Statement of Facts) [R. 40]; "PSOAF" (for Willow Way's Statement of Additional Facts) [R. 48]; "Pl.'s Resp. DSOF" (for Willow Way's response to the Village's Statement of Facts) [R. 48]; and "Def.'s Resp. PSOAF" (for the Village's Response to Willow Way's Statement of Additional Facts) [R. 52], followed by the paragraph number.

[4]The Village argues that Willow Way's disputed facts "are not material" in determining summary judgment. Def.'s Reply at 2. This legal argument does not bar Willow Way from contesting the underlying facts, and the Court will determine each fact's materiality as needed in this Opinion.

The parties dispute whether a second inspection, which revealed that there were still 32 violations, was conducted in October 2017. DSOF ¶ 10; Pl.'s Resp. DSOF ¶ 10. Either way, no further construction took place at the property between November 2017 until February 2020. *Id.* ¶ 12.

Back tracking time, in September 2019, John Pierce, the building director for the Village, found 21 violations on the property and asserted that the property was "open and vacant and an immediate and continuing hazard to the community." DSOF ¶ 13; PSOAF ¶¶ 48, 49. Pierce based his decision to demolish the property in part because "no activity was moving forward," third-parties entered the building with ease, and repair of the building was too costly. PSOAF ¶¶ 49, 50. He contacted Mark Sterk, an attorney for the Village, to begin demolition on the house. DSOF ¶¶ 13, 14. In September and December 2019, the Village placed placard notices at the property describing the demolition process, including the relevant state statute. *Id.* ¶¶ 15–17. Under 65 ILCS 5/11-31-1(e), an unsafe building may be demolished, repaired, or enclosed by the Village if the building is not otherwise demolished, repaired, or enclosed by its owners after notice and an opportunity to be heard. *See* DSOF ¶ 17; 65 ILCS 5/11-31-1(e).

In December 2019, the Village sent—and Willow Way received—a Notice to Remediate. DSOF ¶¶ 19, 22. The Notice advised Willow Way that the property was a hazard to the community and that the Village would demolish it unless it was demolished, repaired, or enclosed, and all hazardous materials removed within 30 days. *Id.*; R. 41-16, Def.'s Exh. 16, Notice to Remediate. It also cited the statute on which the

3

Village based its authority to act, 65 ILCS 5/11–31–1(e). *Id.* This Notice was recorded with the Cook County Recorder of Deeds, *id.* ¶ 20, and the Village also published a notice in the Chicago Daily Law Bulletin, stating "that the property is open and vacant and constitutes an immediate and continuing hazard to the community." *Id.* ¶ 21. Despite these notices, Willow Way did not demolish, repair, or enclose the property. *Id.* ¶¶ 24, 25.

In late February 2020, Willow Way attempted to contact Pierce or Sterk to discuss the property's demolition, but the company's representative was not able to speak with either of them. PSOAF ¶¶ 54–56. On February 27, 2020, Willow Way did meet with Building Inspectors Jorge Torres and Tito Rodriguez, who allegedly told the company that the demolition was not going to happen on that day. *Id.* ¶ 57. In fact, however, the demolition of the property did happen and was completed that day. DSOF ¶ 26, PSOAF ¶ 58. In response, Willow Way filed this lawsuit. Compl. The Village now moves for summary judgment against all claims. Def.'s Mot. Summ. Judgmt.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences

4

in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Takings

Willow Way first asserts that the Village took its property without just compensation. R. 47, Pl.'s Br. at 3. The Takings Clause of the Fifth Amendment to the Constitution instructs that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause applies to the States and local governments through the Fourteenth Amendment's Due Process Clause. *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 802 (7th Cir. 2018) (citing *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017)). A plaintiff bringing a takings claim must show that (1) the governmental entity took its property through a physical taking or unduly onerous regulations; (2) the taking was for public use;

5

and (3) the government has not paid it just compensation for the property. *Conyers v. City of Chicago*, 10 F.4th 704, 710–11 (7th Cir. 2021) (cleaned up).[5] Where a property is damaged as the result of the government's exercise of authority other than eminent domain, the Takings Clause does not apply. *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 336 (7th Cir. 2011) (citing *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008)).

Here, the Village contends that there is no viable takings claim because the Village exercised its police powers in demolishing the Lyons house under 65 ILCS 5/11-31-1. R. 42, Def.'s Br. at 5–10. The Court agrees. Section 11-31-1 of the Illinois Municipal Code authorizes municipalities to "demolish, repair, or enclose … dangerous and unsafe buildings or uncompleted and abandoned buildings within the territory of the municipality …." 65 ILCS 5/11-31-1(a). It is well established that the government's removal of a public nuisance is categorically different from taking property for public use. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) ("[T]he government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place.").

Because Willow Way failed to ensure that the house on its property complied with the Village's building codes, the government was justified in removing the public

---

[5] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

nuisance. *See Devines v. Maier*, 728 F.2d 876, 885–86 (7th Cir. 1984) (citing *Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982)) (noting that "this Court has never required the State to compensate the owner for the consequences of his own neglect"). Although Willow Way took some baby steps toward remedying the numerous violations found during the June 2019 inspection, it concedes there were still 21 outstanding violations shortly before the property's demolition over six months later in February 2020. DSOF ¶¶ 13, 26. Consequently, the building was demolished in part because it was an "open, vacant, and an immediate and continuing hazard to the community." Pierce Dep. 103:12–24; 104:1–21.

In response, Willow Way argues that the Village's use of police power does not undercut the takings claim. Pl.'s Br. at 4. It principally argues that the Village must prove its use of police power "was justified to the point of not requiring compensation." *Id.* at 5. But Willow Way does not actually cite a case for the proposition that the government's failure to justify its use of police power when demolishing private property results in a taking under the Fifth Amendment, as distinct from a state law claim for the wrongful destruction of property, like wrongful condemnation. Instead, Willow Way relies only on a misreading of *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005). In the pertinent part of *Lingle*, the Supreme Court overruled *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980), which had held that government regulation amounts to a taking if the regulation does not "substantially advance" a legitimate state interest. *Lingle*, 544 U.S. at 545. The Supreme Court reasoned that whether a regulation effectuates a taking can only be answered by asking what burdens the

regulation place on the *property*, not what public interests are served by the regulation. *Id.* at 542–44.

Willow Way reads much too much into *Lingle*. Yes, *Lingle* did away with the "substantially advances" test for evaluating whether government *regulation* of some sort effectuates a takings under the Fifth Amendment. But nothing in *Lingle* undermines the separate line of decisions upholding, against takings challenges, the exercise of the government's police power in abating nuisances. *Lingle* itself involved a state's statutory price cap on the rent that oil companies could charge service stations. 544 U.S. at 532. The case it overruled, *Agins*, involved a zoning regulation. 447 U.S. at 257. Not surprisingly, then, *Lingle* did not address whether the Takings Clause requires compensation for abating a public nuisance, even if enclosure or destruction of property is effectuated by the government. The government does not need to "compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan,* 516 U.S. 442, 452 (1996). So too here. The Village demolished Willow Way's property because it was an "open, vacant, and an immediate and continuing hazard to the community." Pierce Dep. 103:12–24; 104:1–21. Given that Willow Way could not prevent persons from entering its property or given Willow Way's months-long failure to remedy the code violations, the Village deemed it too dangerous and beyond reasonable repair. *See Village of Ringwood v. Foster*, 986 N.E.2d 662, 666 (Ill. App. 2d. 2013). Because the Village demolished Willow Way's property pursuant to the

government's police power—and not for public use under the Takings Clause—this claim fails.[6]

Against all this, Willow Way also debates whether the Village was justified under Illinois state law to carry out the demolition under 65 ILCS 5/11-31-1(e). The company argues that (1) the property was not torn down as a hazard; (2) the property was not, in actuality, a continuing hazard; and (3) Village officials intentionally hindered the rehabilitation of the house through improper behavior. Pl.'s Br. at 6–11. At bottom, however, these are complaints about due process—not an uncompensated taking. Yet the term "due process" is absent from the Complaint. The first time that Willow Way mentions the term is in its summary judgment response brief, *see* Pl.'s Br. at 14–15, and it does so in a way that is unclear on how the due process arguments connect to the company's other arguments. Indeed, of all things, Willow Way refers only to *substantive* due process in the response brief. *Id.*

Even if Willow Way had advanced a substantive due process claim earlier in the case, it would have failed. Setting aside its coverage of certain fundamental rights, substantive due process "is very limited" and protects against "only the most egregious and outrageous government action." *Campos v. County of Cook*, 932 F.3d

---

[6]Willow Way originally brought a Fourth Amendment unreasonable "seizure" claim (Count 2), Compl. ¶¶ 58–61, but did not substantively respond to the Village's argument that the seizure was reasonable under the Village's police power. Def.'s Br. at 10; *see generally* Pl.'s Br. The Court thus grants summary judgment against the Fourth Amendment claim. *See United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008) (the defendant "failed to respond to the Government's argument in a Reply Brief, and accordingly, we find that [defendant] waived his sufficiency of the evidence challenge.").

972, 975 (7th Cir. 2019). To successfully prove a substantive due process claim, Willow Way would be required to prove government abuse "so arbitrary and oppressive that it shocks the conscience." *Catinella v. County of Cook*, 881 F.3d 514, 519 (7th Cir. 2018). No doubt some of the accusations levelled by Willow Way—which must be credited at the summary stage—are serious, particularly the allegations that Village officials evaded requests to meet and gave misleading assurances that the demolition was not going to happen on the very day that it did happen. But that conduct followed, it must be remembered, notice to Willow Way of the upcoming demolition, as well as the absolute power of Willow Way to seek a hearing in state court and to automatically stay the demolition after receiving notice of the upcoming demolition. 65 ILCS 5/11-31-1(e) ("If, however, before the municipality proceeds … , any person with a legal or equitable interest in the property has sought a hearing … before a court …, then the municipality *shall not proceed* with the demolition … until the court determines that that action is necessary to remedy the hazard and issues an order authorizing the municipality to do so.") (emphasis added). This governmental action is not akin to the conscience-shocking misconduct that would amount to a substantive due process violation. *Compare Rochin v. California*, 342 U.S. 165, 172 (1952) (holding that the "forcible extraction of [plaintiff's] stomach contents" to obtain illicit drugs violates substantive due process) *and Belcher v. Norton*, 497 F.3d 742, 753–54 (7th Cir. 2007) (holding substantive due process is violated if law enforcement extorted property by threatening arrests) *with Palka v. Shelton*, 623 F.3d 447, 453–54 (7th

10

Cir. 2010) (concluding that a police investigation did not violate due process merely because it did not conform to internal department procedures).

To the extent that Willow Way is asserting a procedural due process claim, that too would fail. Remember that the Village provided Willow Way with multiple notices warning about the code violations, and (to repeat) the statute itself provides Willow Way with the means to automatically stay the demolition by asking for a hearing in state court. 65 ILCS 5/11-31-1(e). Willow Way never contested the validity of the notices and did not file a complaint in state court before the demolition. There are no procedural due process violations. *See Pierce v. Village of Divernon, Ill.*, 17 F.3d 1074, 1079–80 (7th Cir.1994) (holding that actual notice and an opportunity to satisfies due process). Willow Way has presented neither a valid takings claim nor a due process claim.

### B. Eminent Domain

Finally, Willow Way brings an eminent domain claim under Article 1, Section 15 of the Illinois Constitution. Ill. Const. art. 1, ¶ 15; Compl. ¶¶ 62–67. But with the federal law claims dismissed, the Court will relinquish supplemental jurisdiction over it. The Takings Clause in the Illinois Constitution is broader than its federal counterpart, because it also protects against damage to property. *See Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 363 (7th Cir.1998). The state court system should consider this claim, rather than federal court. When federal claims in a case are dismissed before trial, there is a presumption that the federal court will relinquish jurisdiction over any remaining state law claims. *Dietchweiler by Dietchweiler*

11

*v. Lucas*, 827 F.3d 622, 631 (7th Cir. 2016) (per curiam) (citing cases). Indeed, this presumption is statutorily expressed in 28 U.S.C. § 1367(c)(3), which provides for the discretionary relinquishment of jurisdiction over state claims when the claims providing original jurisdiction (here, federal-question jurisdiction) have been dismissed. Given the broader scope of the Illinois Constitution's Takings Clause, relinquishment is appropriate here. The state law claim is dismissed without prejudice.

## IV. Conclusion

Summary judgment is granted to the Village against the federal law claims. The state law eminent-domain claim is dismissed without prejudice to refiling in state court. The status hearing of April 8, 2022 is vacated. Final judgment will be entered.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022

12